## NEYLAND et al. v. BENSON. (No. 9988.)

(Court of Civil Appeals of Texas. Dallas. Jan. 22, 1927. Rehearing Denied
Feb. 26, 1927.)

1. **Pleading ⬅111—To sustain controverting plea to plea of privilege, alleging false representations in county of suit, falsity of statements and injury must be shown.**

Where plaintiff, in answer to defendants' plea of privilege, filed controverting plea, seeking to retain venue by reason of false and fraudulent representations having been made in county where suit was instituted, in order to sustain such plea it was necessary that plaintiff prove falsity of such statements and injury resulting therefrom.

2. **Pleading ⬅111—Evidence held not to show that representations in county of suit by defendant to plaintiff were false and injury to plaintiff therefrom.**

Evidence *held* insufficient to show that representations, alleged to have been made by defendant to plaintiff in county of suit relative to value of bank stock which was purchased by defendants from plaintiff, were false and that plaintiff, at least prima facie, was injured as result thereof.

3. **Venue ⬅8—To sustain venue in county of suit, proof merely of transaction which might constitute action of fraud occurring within county is insufficient (Rev. St. 1925, art. 1995, subd. 7).**

Under Rev. St. 1925, art. 1995, subd. 7, in order that plaintiff may sustain venue in county of suit, it is not only necessary to prove transaction which might constitute action of fraud oc-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

curring in that county, but also proof of fraud with resulting injury therefrom.

**4. Pleading ⊖⟶111—Defendants' offer of plaintiff's petition in hearing on plea of privilege did not constitute proof of allegations of fraud therein.**

Defendants' offering plaintiff's petition in evidence on trial of plea of privilege without limitation did not constitute proof of allegations of fraud contained in such petition.

**5. Evidence ⊖⟶142(4)—Recital of value of stock in instrument assigning it held not evidence of value of similar shares.**

Recital in instrument assigning shares of stock as security would not be evidence of value of similar shares of stock as to persons who were not parties to such assignment.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Suit by Mrs. J. W. (Lillie) Benson against Mayo W. Neyland, Jr., and others. Judgment overruling defendants' plea of privilege, and defendants appeal. Reversed and rendered.

Merritt & Leddy, of Dallas, for appellants.
Holland V. Moore, of Dallas, for appellee.

VAUGHAN, J. Appellee, Mrs. J. W. Benson, instituted this suit in the court below against Mayo W. Neyland, Jr., and Robert R. Neyland, appellants, and Mayo W. Neyland, Sr., as defendants, alleging that she was the widow of J. W. Benson, now deceased; and that said J. W. Benson was the son of Mary Grace Benson; that Mary Grace Benson was a sister of C. A. M. Pitts, now deceased; that said Pitts died prior to the year 1925 and left a will, by the terms of which, among other things, he devised to Mary Grace Benson an interest in 231 shares of stock in the First National Bank of Montgomery, Ala., the value of which was $200 per share; that it was provided in said will that Mary Grace Benson should be entitled to only the dividends which might, during her lifetime, be declared for payment on said shares of stock, and that at her death said stock should become the property of her four sons, John William Benson, James Coleman Benson, Joseph Eugene Benson, and Walter Lee Benson. It was further averred that appellee had never been married to any one except John William Benson, and that he died intestate on the 23d day of January, 1924, and that there were no children born to their union.

For cause of action appellee alleged that, on or about the 13th day of June, 1925, Mayo W. Neyland, Jr., acting for himself and on behalf of Neyland & Neyland, a firm composed of Mayo W. Neyland, Jr., Robert R. Neyland, and Mayo W. Neyland, Sr., came to her place of residence in Dallas county, Tex.,

and made certain representations in regard to the bank stock aforesaid, which induced her to sell and transfer her interest in same to Robert R. Neyland for the sum of $500. The particular fraudulent representations alleged to have been made and relied upon were: (1) That since her husband had died his interest in said bank stock would go to his brothers, that appellee was not and could not be entitled to the interest of her said husband; (2) that, even if appellee had a right to any part of said bank stock, such interest as her husband was entitled to was of small value and amounted to only about $1,500, and that he, the said Mayo W. Neyland, Jr., would pay appellee, for himself and his codefendants, the sum of $500 for the assignment of her interest in said bank stock. Appellee alleged that she relied upon such statements as being true and correct and was induced by reason thereof to execute and deliver an assignment conveying to appellants all her right, title and interest to said bank stock, for which she was to receive and did receive the small sum of $500, and that she would not have executed said transfer but for said representation; that the actual value of her rights out of which she was defrauded by the Neylands was not less than $9,000; and that by virtue of their fraudulent misrepresentations, intentionally made, and relied upon by appellee, she had been deprived of property value of not less than $9,000. She averred that she had no knowledge or notice of the fraud alleged to have been practiced upon her until about the 1st day of March, 1926, when she procured a copy of the will of said C. A. M. Pitts and learned that the actual value of her interest in said bank stock was approximately $9,000. The relief sought by appellee was that she have judgment canceling and annulling the assignment made by her of said bank stock. The appellants were duly served with citation. The defendant Mayo W. Neyland, Sr., was not served. In due time and form appellants filed their separate pleas of privilege to be sued in Hunt county, the county of their residence. Appellee duly filed a separate controverting plea to said pleas of privilege, in which she sought to retain venue in Dallas county by reason of the false and fraudulent representations alleged to have been made in Dallas county by Mayo W. Neyland, Jr., to the same tenor and effect as alleged in her original petition, supra. Hearing was had on said plea of privilege November 16, 1926, and resulted in a judgment overruling same, from which this appeal was prosecuted.

Of the several points upon which this appeal is predicated, we find it necessary to discuss only the sixth and seventh, and as presenting but one question.

Sixth point. There was no evidence offered by appellee showing that the representations alleged as to the value of the bank

---

⊖⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

stock were false, hence no actionable fraud was shown.

Seventh point. Appellee failed to show by any proof that the market value of the interest possessed by her in said bank stock was in excess of $500, the amount she received therefor, there being no evidence in the record showing the value of appellee's interest in the stock, incumbered as it was by the life estate of Mary Grace Benson, hence no fraud was shown which entitled appellee to retain jurisdiction in Dallas county.

The above points present, in effect, but one proposition, viz., that in order to maintain venue in Dallas county, appellee should have established not only that the alleged fraudulent transaction occurred in Dallas county and that the means alleged to have been used were so employed, viz., the representations and statements alleged to have been made, but that, at least prima facie, appellee was injured thereby, that is, sustained a financial loss on account of the transaction alleged to have been consummated as the result of the alleged fraud.

Bearing upon this amalgamated proposition, the following testimony that should be considered was introduced.

The only testimony with reference to the value of this stock was given by J. A. Ledbetter, cashier of the First National Bank of Montgomery, Ala., who testified by deposition, on direct examination, that the par value of the capital stock of said bank on June 13, 1925, was $100 per share, that the book value of said stock on said date was $151.98 per share, that the market value of said stock on said date was $143 per share, for assenting stock, and $144 for nonassenting stock. On cross-examination, he admitted that his evidence as to the value of said stock was stock to which a good title could at that time have been made, that he did not know what the actual cash market value of stock in said bank was on June 13, 1925, offered by a person who owned only a remainder interest therein and would not probably have the right to collect any dividends on such stock for more than 14 years. He further testified, in reference to incumbered stock, as follows:

"If one owning stock in said bank died and bequeathed a life interest in the same to a person 60 years of age, and whose life expectancy is 14 years longer, and upon the death of the owner of the life estate the testator bequeaths it to another with a provision in the will that that other should never sell the stock, but should use the dividends of 8 per cent. only arising therefrom, I do not know what the value of the interest of the remainderman of one share of that stock was on June 13, 1925. It would have a very small market value only as it is extremely doubtful that you would be able to find a purchaser for the remainder interest in the stock. I doubt that it would have a market value. I did not state that the interest of the remainderman had a cash market value on June 13, 1925. I do not know of any stock having been

sold that was incumbered and situated as this stock apparently is from the interrogatories."

The above is all the evidence as to the value of the bank stock in question. Appellee's interest was one-fourth of 231 shares, and this was incumbered by the life estate of Mary Grace Benson, whose life expectancy was about 14 years at the date of the alleged fraudulent transaction, which interest in said stock was further attempted to be incumbered by a provision in the will of C. A. M. Pitts to the effect that said stock should not be sold during the lifetime of the remaindermen. The cross-examination of the witness Ledbetter, it is safe to assume, was based upon the following provisions of the Pitts will:

"I give and bequeath to my sister, Mary Grace Benson, 231 shares of First National Bank stock of Montgomery, Alabama. * * * The aforesaid bank stock of the First National Bank of Montgomery, Alabama, is to remain intact, can neither be sold nor traded, and only the interest, amounting to $1418.48 annually, or 8% of the face value, pays (.02) two per cent. quarterly, as follows: January first, April first, July first, and October first, each quarterly payment amounting to $462.00. At the death of Mary Grace Benson this aforesaid bank stock of the First National Bank of Montgomery, Alabama, shall become the property of her four sons, viz., John William Benson, James Coleman Benson, Joseph Eugene Benson and Walter Lee Benson, but this stock shall still remain intact and can neither be sold or traded by any one of the four sons of Mary Grace Benson, individually or collectively, but only the interest of $1848 annually, or $462 quarterly, to be equally divided among the said four sons of Mary Grace Benson."

[1] Pitts died in 1919. His will was duly probated in the county court of Hunt county prior to the date of the alleged fraud. Appellee and J. W. Benson were married April 12, 1920. Benson died January 23, 1924. In order to establish the charge of fraud as alleged, it was incumbent upon appellee to show the falsity of the statements alleged to have been made by appellant Mayo W. Neyland, Jr.; viz. (a) that her deceased husband's interest in said bank stock would go to his brothers; (b) that appellee was not and could not be entitled to the interest of her said husband; and (c) that even if she had a right to any part of said bank stock, such interest as her husband was entitled to was of small value, that it amounted to only about $1,500.

In support of her charge of fraud, appellee testified that, in company with one Mr. Purl Collins, Mayo W. Neyland, Jr., called to see her at her home in Dallas, Tex., either the 12th or 13th of June, 1925; that at that time she had no knowledge of any interests that she might have in the will of Mr. Pitts; that Mr. Neyland talked to her with reference to making an assignment of her interest in the bank stock, saying that her sister-in-law had

accepted for her share $500, and that she would not be entitled to anything if her mother-in-law should die, and if she should be it would only be to the amount of $1,500; that they were willing to take the loss, or to take a chance, and give her $500; that when she accepted the $500 for her interest, said Neyland wrote a check on the firm of Neyland & Neyland; that he stated that she was not entitled to it by the laws of Alabama on account of not having children; that he told her nothing about the value of the bank stock further than to say that if there was any value at all, it would be $1,500—that is, her interest in the stock.

On cross-examination, she testified that said Neyland told her before she accepted his proposition that her husband's interest in the bank stock was subject to a life estate of her mother-in-law, Mary Grace Benson, and that she could not get anything until after her death; that her interest in the bank stock "would not come until the death of Mary Grace Benson;" that she would only receive, if she received any thing at all at her mother-in-law's death, about $1,500; that she would inherit her husband's interest in the stock, subject to Mrs. Mary Grace Benson's life estate, but would not get any part thereof until she died.

To sustain her controverting plea, it was incumbent upon appellee to prove that the statement that her interest in the stock was not worth in excess of $1,500 was false. This she attempted to do when she offered the testimony of the witness Ledbetter as to the value of unimcumbered stock of the same issue as that involved, to which there was a clear title, but that is not the kind of stock she sold as the result of the alleged fraud. The stock she parted title with was incumbered by the life estate of another person, and attempted to be further incumbered by a provision of the will, creating the estate in remainder, which had been duly probated. The representation as to the value of the stock must be limited to the value of same at the time of the commission of the alleged fraud, therefore it was incumbent upon appellee to show that the statement that her interest in the stock at that time was not worth in excess of $1,500 was false. The record is barren of any evidence establishing that the interest appellee in the stock involved, at time of the alleged fraudulent transaction, which was subject to Mrs. Mary Grace Benson's life estate, had a market value in excess of $1,500, or, incumbered as it was at the date of said transaction, was worth any particular sum of money.

[2] Through this evidence it is apparent that appellee failed to discharge the burden that rested upon her under her controverting plea; viz., to show that the representations alleged to have been made by Neyland were false, and that she, at least prima facie, was injured as the result thereof. This certainly required more than showing that there was created by the alleged fraud the right to maintain a cause of action thereon without reference to the right to recover in some sum on account of injury sustained by appellee by reason of the fraud. J. G. Smith Grain Co. v. Shuler (Tex. Civ. App.) 249 S. W. 524; Richardson v. D. S. Cage Co., 113 Tex. 152, 252 S. W. 747; First Nat. Bank v. Bulls (Tex. Civ. App.) 243 S. W. 577; Nagle v. Weatherby & Co. (Tex. Civ. App.) 236 S. W. 509; Sargent v. Wright (Tex. Civ. App.) 230 S. W. 781; Caughan v. Urquhart (Tex. Civ. App.) 265 S. W. 1097; Elliott Jones & Co. v. M. K. Townes Const. Co. (Tex. Civ. App.) 283 S. W. 246; Coalson v. Holmes, 111 Tex. 502, 240 S. W. 896; Bush & Gerts Piano Co. of Texas v. Connolly (Tex. Civ. App.) 280 S. W. 349; Dallas Ry. Co. v. Kimberly (Tex. Civ. App.) 268 S. W. 1054.

Even though it should be conceded that it did not rest upon appellee to establish that, by reason of the fraud alleged, she sustained an injury and the extent thereof, in order to show the existence of a cause of action based on fraud, nevertheless the burden rested upon her to establish the falsity of the representations and statements alleged by her to constitute the fraud, in order to show that such statements and representations, in fact, did amount to fraud, for, until and unless such representations shall have been proved to be false, not even prima facie could it be said that appellee had discharged the burden resting upon her to show the existence of the exception claimed by her to exclusive venue of appellants in the county of their residence.

[3] We have carefully considered the majority opinion in Edmonds v. White (Tex. Civ. App.) 226 S. W. 819, cited by appellee in support of her proposition, that under article 1995, subdivision 7, R. C. S. 1925, it was not incumbent upon her, in order to sustain venue in Dallas county, to prove fraud; viz., that an injury was sustained and the extent thereof, but merely that a transaction which might constitute an action of fraud occurred in that county. If that is the holding in the Edmonds-White Case, we regret to say we cannot assent thereto.

[4] Appellee contends that, because appellants offered her petition in evidence without limitation, same became proof of the allegations of fraud therein made. This contention we cannot sustain. Waxahachie Nat. Bank v. Sigmond Rothschild Co. (Tex. Civ. App.) 235 S. W. 633; Meadows & Co. Inc., v. Turner (Tex. Civ. App.) 270 S. W. 899.

[5] Appellee further contends that it was shown that her one-fourth interest in the 231 shares of bank stock was worth $5,700 because a similar interest in said 231 shares was accepted as security by the First National Bank of Greenville, Tex., for the payment of a prior loan of $5,700. Even if the instrument evidencing the assignment of the stock recited its valuation to be $5,700, such

recital would not be evidence of the value between the parties to this suit, they not having been parties to that assignment. Said assignment was executed by Kate L. Benson and others and recites that her husband, J. C. Benson, died on the 22d day of May, 1923, heavily indebted to the First National Bank of Greenville, Tex., and that his estate is still indebted to said bank in said sum of $5,-700, and that the owners of a one-fourth interest in said bank stock desired to transfer said stock to said bank as collateral to secure said indebtedness. This was not a purchase of the stock, but simply the acceptance of same as security for the payment of a prior existing indebtedness. This assignment was not admissable for any purpose on the issue before the court.

In our opinion, the court erred in overruling appellants' pleas of privilege. It is therefore ordered that the judgment of the trial court be and the same is hereby reversed, and that judgment be and is here rendered sustaining said pleas of privilege and transferring this cause to the district court of Hunt county, Tex.

Reversed and rendered.